UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD J. HOF | * | CIVIL ACTION NO. 19-10696 |
| | * | |
| VERSUS | * | SECTION: "D"(1) |
| | * | |
| LAPORTE, A PROFESSIONAL ACCOUNTING CORPORATION, ET AL. | * | JUDGE WENDY B. VITTER |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Motion for Protective Order filed by LaPorte, a Professional Accounting Corporation ("LaPorte"). (Rec. Doc. 39). Having reviewed the documents *in camera* and having considered the parties' briefs, the court finds that LaPorte has not established that the primary motivating purpose behind the creation of the emails in question was anticipation of litigation. Accordingly, and for the following reasons, the Motion for Protective Order is DENIED. LaPorte shall produce the emails to Hof within seven days.

Background

In this lawsuit, plaintiff Ronald J. Hof, in his capacity as trustee of the Chapter 7 Bankruptcy Estate of FoodServiceWarehouse.Com, LLC ("FSW") alleges that Laporte is liable for professional negligence arising out of LaPorte's performance of audit services for FSW for the 2013 and 2014 fiscal years. Of potential relevance to the present discovery issue, LaPorte decided to disengage from the FSW audit for the 2015 fiscal year and sent formal correspondence to this effect to FSW's interim CEO, Thomas Kim, on May 9, 2016. That letter has been produced in discovery. On May 20, 2016, FSW filed a bankruptcy petition. However, plaintiff did not file this adversary proceeding against LaPorte in bankruptcy court until May 13, 2019. On May 28, 2019, plaintiff filed a motion in this court to withdraw the bankruptcy reference.

1

Presently before the court is the question of whether five emails appearing on LaPorte's privilege log are entitled to protection under the work product doctrine. Each of these emails is dated April 1, 2016. All of them are described on the privilege log as "Email correspondence in anticipation of litigation and at the direction of insurer with non-testifying expert regarding disengagement from 2015 Pride and FSW audits." The senders and recipients include certain LaPorte employees as well as Joe Richardson, a CPA with Harper Peterson in Houston. According to LaPorte, when it made the decision to disengage from the 2015 FSW audit, it was "aware that litigation could result from the disengagement of an audit that was already underway," and so, it sought assistance from its insurer, Continental Casualty Company ("CNA"). CNA directed LaPorte to Mr. Richardson, who held a telephone conference with LaPorte and who exchanged two emails with LaPorte concerning procedures for disengagement. The other emails on the privilege log involve LaPorte employee Terri Troyer relaying the substance of Mr. Richardson's advice to a larger group of LaPorte employees and explaining LaPorte's plans based on Mr. Richardson's advice.

After the parties submitted the documents to the court for *in camera* review, the court ordered that briefing would be required for the court to address the issue. LaPorte filed the present Motion for Protective Order. It argues that the documents are protected by the work product doctrine because the emails were exchanged to aid in future litigation by ensuring that LaPorte acted in accordance with applicable professional standards. It submits that disengagement from an audit is an unusual occurrence. It explains that the email correspondence under review reflects the advice and assistance it received from CNA and Mr. Richardson and insists that contact with CNA was only made in anticipation of potential litigation from an improper disengagement. LaPorte adds that the substance of Mr. Richardson's advice is contained in the May 9, 2016, letter and it

argues that there are no exceptional circumstances that would warrant disclosure of this protected emails.

Plaintiff opposes, arguing that it is clear from LaPorte's description that the advice was being obtained so as to avoid possible future litigation, and not in anticipation of any litigation concerning the contemporaneous business actions being taken at the time. . Plaintiff argues that here, LaPorte sought advice to ensure it properly disengaged from the audit. Plaintiff insists that however rare it may be to disengage from an audit, this advice is not work product in anticipation of litigation. Instead, plaintiff argues that LaPorte merely sought to avoid future litigation. Plaintiff insists that the emails were prepared in the ordinary course of business and are not protected by the work product doctrine.

## Law and Analysis

1. *Standard of Review*

The work-product doctrine protects from discovery documents and tangible things "prepared by an attorney 'acting for his client in anticipation of litigation.'" United States v. Nobles, 422 U.S. 225, 238 (1975) (quoting Hickman v. Taylor, 329 U.S. 495, 508 (1947)). In contrast, "materials assembled in the ordinary course of business," are excluded from work-product materials. United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982). Codified at Federal Rule of Civil Procedure 26(b)(3), the work-product protection extends to materials prepared by the party itself and representatives other than attorneys. If the party resisting discovery establishes that the materials are work product, the party seeking discovery can only obtain the documents if they are relevant and proportional to the needs of the case and the party "has substantial need for the materials to prepare its case and that it cannot, without undue hardship, obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P.

26(b)(3)(A); see Lassere v. Carroll, No. CIV.A. 13-5430, 2014 WL 7139138, at *4 (E.D. La. Dec. 15, 2014).

"[T]he burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work product, falls on the party seeking to protect the documents from discovery." Piatkowski v. Abdon Callais Offshore, L.L.C., No. CIV.A.99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (footnotes omitted). The work product "privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" In re Kaiser Aluminum & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000) (quoting United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)). Courts have stated that "[g]enerally, a reasonable anticipation of litigation requires existence of an identifiable specific claim or impending litigation at the time the materials were prepared." Chemtech Royalty Assocs., L.P. v. United States, No. 06-258-RET-DLD, 2009 WL 854358, at *2 (M.D. La. Mar. 30, 2009) (quoting Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., No. CIV. A. 00-CV-3683, 2001 WL 605199, at *4 (E.D. Pa. May 31, 2001)).

Thus, the fact that documents were prepared to assist a company in complying with the law is not enough to find that they were prepared in anticipation of litigation. For example, in Chemtech, the court noted that "work papers generated by an attorney who prepares a tax return are not protected by the work product doctrine 'simply because there is always a possibility that the IRS might challenge a given return'" and added that "[t]here must be evidence to expect 'future trouble with the IRS,' or the documents will be outside the scope of the work product doctrine." Id. (quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981)). Similarly, in El Paso, the Fifth Circuit held that a tax pool analysis by in house counsel was not protected by the work product doctrine where the memorandum contained legal analysis but not an actual litigation

4

strategy, where no item in the analysis was under IRS scrutiny at the time the memorandum was drafted, and where the company's litigation was handled by outside counsel. 682 F. 2d at 543.

Hof cites to numerous out of circuit but useful cases similarly holding that business planning to avoid future litigation does not qualify for work product protection. For example, in BoDeans Cone Co. v. Norse Dairy Systems., L.L.C., the Northern District of Iowa determined that an email by a company's executive was "a sort of *post mortem* on the DOJ's then-concluded investigation of [the acquisition of the defendant], with an eye toward business planning to avoid *a general possibility* of future litigation." 678 F. Supp. 2d 883, 891 (N.D. Iowa 2009) (emphasis in original). The court held that the email was not protected by the work product doctrine because "business planning that considers the possible litigation risks involved does not cloak pertinent documents with work-product privilege." Id. Similarly, in Diversified Industries, Inc. v. Meredith, the Eighth Circuit Court of Appeals noted that "the work product rule does not . . . come into play merely because there is a remote prospect of future litigation" in holding that a report prepared by a law firm at the request of the plaintiff's board of directors was not protected by the work product doctrine because the board sought information about "what actually had been going on and wanted to frame policies and procedures that in the future would protect it against repetitions of the prior misdeeds, if any, of its employees committed in the past." 572 F.2d 596, 604 (8th Cir. 1977). And in Binks Manufacturing. Co. v. National Presto Industries, Inc., the Seventh Circuit Court of Appeals held that two emails written by the purchaser's associate resident counsel were not protected by the work product doctrine. 709 F.2d 1109, 1120–21 (7th Cir. 1983). Although at the time of the communications the parties already had a business dispute related to the purchaser's assertions that the equipment did not meet specifications and the seller's position that the sale price was due and owing, and although there was a remote prospect of litigation, the court found that

other correspondence indicated the purchaser still intended to have the seller correct the problems with the equipment and might withhold the purchase price and litigation had not yet been threatened. 709 F.2d 1109, 1120–21 (7th Cir. 1983); see Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) (holding that risk management documents generated to keep track of, control, and anticipate the costs of the defendant's products liability litigation and which contained aggregate reserve information but no individual case reserves calculated by the defendant's attorneys were not protected by the work product doctrine because the risk management department was not involved in giving legal advice or in mapping litigation strategy in any individual case, because the aggregate reserve information served numerous business planning functions but did not enhance the defense of any particular lawsuit, and, critically, because business planning includes planning for litigation).

Although each case turns on its particular facts, courts consistently focus on determining the purpose of the advice or information at issue. For example, in In re Tri State Outdoor Media Group, Inc., a committee of bondholders hired a financial advisor to assist in negotiating the financial restructuring of the debtor after its default but before they ultimately filed an involuntary bankruptcy petition a few months later. 283 B.R. 358, 361 (Bankr. M.D. Ga. 2002). The court held that analyses by the financial advisor was subject to the work product doctrine because the engagement letter indicated that bankruptcy was contemplated at the inception of the advisor's work, and therefore, the documents were prepared in anticipation of bankruptcy, which, as an adversary proceeding, was found to be in anticipation of litigation. Id. at 364.

2. *Analysis*

Here, there is no dispute that litigation was not pending or imminent at the time of these communications. Thus, the court must determine whether LaPorte has established that "the

primary motivating purpose behind the creation of the document was to aid in possible future litigation." El Paso Co., 682 F.2d at 542. LaPorte argues that the emails here were generated as a result of its attempts to obtain legal advice in anticipation of potential litigation that might result from an improper disengagement. However, the emails cannot be construed as created to aid LaPorte in future litigation the way the financial analyses in Tri-State would aid the bondholders in asserting their claims against the debtor in bankruptcy. 283 B.R. at 364. More like the advice obtained in BoDeans and Diversified, the LaPorte communications were focused on employing best practices to avoid future litigation. See Diversified, 572 F.2d at 604; BoDeans, 678 F. Supp. 2d at 891. Of course, BoDeans and Diversified are not entirely equivalent to the present case as they involved a more generalized risk of future litigation. Here LaPorte alleges it feared litigation in a specific situation for which it sought assistance. In that sense, this case is similar to the Binks case where the parties were in an active business dispute related to the sale of equipment but where litigation was possible but had not yet been threatened. 709 F.2d at 1120. There, the Seventh Circuit found the purchaser had failed to meet its burden to establish the document was prepared because of the prospect of litigation or that some articulable claim was likely to lead to litigation. Id.

Importantly, it is LaPorte that bears the burden of establishing the primary motivating purpose was to aid in future litigation. In El Paso, the Fifth Circuit was persuaded that legal analysis by counsel was not prepared in anticipation of litigation when it did not contain an actual litigation strategy and where no item addressed in the analysis was under scrutiny by the IRS. 682 F. 2d at 543. The instant situation is even less compelling. Here, the documents were not created by counsel; no lawyer is even cc'd. The documents do not contain any litigation strategy. Nor was there any active dispute between LaPorte and FSW that might result in litigation. FSW did not

7

assert a claim against LaPorte until more than three years later. And considering that the present litigation concerns alleged malfeasance in preparing the 2013 and 2014 audits and not an improper disengagement from the 2015 audit, it is unclear whether litigation has ever resulted from LaPorte's disengagement.

The court must conclude that LaPorte has failed to meet its burden of establishing that the primary motivating purpose in seeking and sharing the advice in the emails was to aid in future litigation. Accordingly, the documents are not protected by the work product doctrine.

## Conclusion

For the foregoing reasons, LaPorte's Motion for Protective Order (Rec. Doc. 39) is DENIED. LaPorte shall produce the emails listed on the privilege log to Hof within seven days.

New Orleans, Louisiana, this 6th day of August, 2020.

                                               Janis van Meerveld
                                           United States Magistrate Judge