UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RONALD J. HOF IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF FOODSERVICEWAREHOUSE.COM | * * * * * | CIVIL ACTION NO. 19-10696 SECTION: "D"(1) JUDGE WENDY B. VITTER |
| VERSUS | * * | |
| LAPORTE, A PROFESSIONAL ACCOUNTING CORPORATION, ET AL. | * * * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is LaPorte, APAC's Motion to Compel witnesses Kevin Bouma and Madhu Natarajan to answer certain questions regarding communications that plaintiff contends are protected by the attorney-client privilege. (Rec. Doc. 58).[1] For the following reasons, the Motion is DENIED.

Background

In this lawsuit, plaintiff Ronald J. Hof (the "Trustee"), in his capacity as trustee of the Chapter 7 Bankruptcy Estate of FoodServiceWarehouse.Com, LLC ("FSW") alleges that LaPorte, APAC ("Laporte") is liable for professional negligence arising out of LaPorte's performance of audit services for FSW for the 2013 and 2014 fiscal years. The Trustee contends that the board of FSW relied on the 2013 audit in recommending and obtaining the approval of FSW's membership to explore the possibility of a public or private offering. To achieve that goal, FSW began expanding and taking on debt. It sought $75,000,000 in financing from JP Morgan Chase Bank,

---

[1] LaPorte also moved for a protective order regarding the use of documents at video depositions and to strike certain testimony from a deposition transcript. Those issues were resolved at oral argument. (Rec. Doc. 68).

1

N.A. ("Chase") in June 2015. Chase began its field examination around the time that LaPorte was completing its field work in connection with its 2014 audit of FSW. According to the Trustee, Chase identified "numerous accounting deficiencies and misstatements that LaPorte was required, but failed, to identify and disclose in its audit opinions." (Rec. Doc. 1-2, at 5). FSW was unable to remedy the issues identified and Chase declined to advance funds to FSW in January 2016. FSW alleges that it brought in an experienced CPA/auditor and a restructuring advisor in February and March of 2016, but it was determined that restructuring would not be possible.

On May 20, 2016, FSW filed a bankruptcy petition. Since that time, the Trustee has liquidated all of the assets of FSW, except this claim.

The Trustee filed this adversary proceeding against LaPorte in bankruptcy court on May 13, 2019. On May 28, 2019, the Trustee filed a motion in this court to withdraw the bankruptcy reference. Trial is presently set to begin on January 11, 2021. The deadline to complete discovery is September 25, 2020.

LaPorte seeks an order compelling Kevin Bouma and Madhu Natarajan, a former FSW board member and employee respectively, to answer certain questions that they did not answer at their depositions on the basis of the attorney client privilege. Bouma's deposition was closed. Natarajan's deposition was left open and will continue on September 21, 2020.

Bouma was involved with FSW as a board member from its inception until his resignation in 2016. Natarajan was employed by FSW as general manager and CEO. In November 2016, the Trustee made damages claims against Bouma and Natarajan (among other past and present officers, directors, managers, and employees of FSW). Bouma and Natarajan were represented by independent counsel at that time, and they settled with the Trustee.

In advance of their depositions in the present case, Bouma and Natarajan each spoke with counsel for the Trustee. The Trustee submits that their testimony is relevant here to both FSW's reliance on the LaPorte audits and to FSW's damages. The Trustee submits that Bouma and Natarajan were part of the management of FSW during the time period relevant to this lawsuit and were among the most important individuals associated with FSW's expansion and spending at the time. During their depositions, counsel for the Trustee objected to either individual testifying about the contents of their discussions with counsel or about the identity of the documents they were shown during those discussions.

LaPorte argues that the attorney-client privilege is not applicable to the communications at issue because the former employees' conversations with counsel for the Trustee were not intended to provide any legal advice to FSW. Instead, LaPorte argues that the conversations were intended to help the Trustee's counsel pursue claims on behalf of FSW's creditors because FSW is essentially a dissolved entity. Further, LaPorte points out that the Trustee earlier made claims against Bouma and Natarajan. It argues that they cannot be considered "clients" of the Trustee.

The Trustee insists that the attorney-client privilege applies to the pre-deposition communications because Natarajan and Bouma were employed by and/or directing the actions of FSW during the relevant time period, they were among the most important individuals associated with FSW's expansion and spending, and they spoke with the Trustee's counsel to enable counsel to pursue this auditing malpractice case, a pre-bankruptcy petition asset of FSW.

<u>Law and Analysis</u>

1. *Privilege over Communications with Former Employee*

Louisiana state law governs privilege in this case asserting state law claims. Fed. R. Evid. 501. It appears that there is no reasoned Louisiana court decision addressing whether the

3

communications of a corporation's counsel with the corporation's former employees are privileged. Hanover Ins. Co. v. Plaquemines Par. Gov't, 304 F.R.D. 494, 496 (E.D. La. 2015). In Hanover, the Eastern District of Louisiana considered the two federal cases cited by the Louisiana Supreme Court in entering a protective order preventing discovery of communications between corporate counsel and former employees relating to the subject matter of the litigation.[2] Id. at 497. One was Justice Burger's concurrence in the United States Supreme Court's seminal decision in Upjohn Co. v. United States, in which Justice Burger expressed his view that when a former employee speaks "at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment," the communications should be privileged. 449 U.S. 383, 403 (1981) (Burger, C.J., concurring). The other case cited by the Louisiana Supreme Court was In re Allen, where the United States Fourth Circuit Court of Appeals held that the attorney-client privilege extends to communications with former employees. 106 F.3d 582, 606 (4th Cir. 1997). At issue in Allen were counsel's notes and summary of her interview of a former employee. Id. In finding the communications privileged, the Fourth Circuit considered that the former employee had been employed during the time period at issue in the litigation, that the attorney interviewed the former employee at the direction of the former employer in order to provide legal advice to the former employer, and that the attorney needed the information in order to develop her legal analysis for the client. Id.

After considering these cases, the Hanover court concluded that:

> the Louisiana Supreme Court would recognize the existence of a privilege between counsel for a corporation and a former employee of the corporation, at a minimum, where (1) the former employee was employed by the corporation during the time

---

[2] The Louisiana Supreme Court entered the order without reasons, stating merely "Judgment of the trial court is vacated and set aside. Relators' motion for protective order is granted, and a protective order is entered in their favor preventing any discovery regarding privileged communications between relators' corporate counsel and any former employees relating to the subject matter of this lawsuit." Turner v. Lowery, 97-2533 (La. 10/29/97), 703 So. 2d 1.

4

>relevant to the attorney's current representation of the corporation, (2) the former employee possesses knowledge relevant to the attorney's current representation of the corporation, and (3) the purpose of the communication is to assist the attorney in "(a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct."

304 F.R.D. at 499–500 (quoting Upjohn, 449 U.S. at 403 (Burger, C.J., concurring). The court found that communications between former employees and counsel for the former employers in preparation for their depositions as well as the identity of the documents shown to the former employees were protected by the attorney-client privilege. Id. at 500. The court observed that the former employees had been employed with their respective employers at the time of the construction project at issue in the litigation, they both had knowledge of the project and were the most important individuals associated with the project, and they spoke with the corporate attorneys in order to defend against the litigation. Id.

When a corporation files for bankruptcy and the trustee "prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor." In re Segerstrom, 247 F.3d 218, 224 (5th Cir. 2001). Thus, the trustee is vested with the authority to exercise the corporation's attorney-client privilege. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 354 (1985). For example, post-termination communications between a former employee and the bankruptcy trustee of the former employee have been found protected by the attorney-client privilege. In In re Worldwide Wholesale Lumber, Inc., the Bankruptcy Court for the District of South Carolina applied the Fourth Circuit's analysis in Allen to hold that communications between the trustee's counsel and a former officer of the debtor were protected by the attorney client privilege to the extent the communications concerned matters within the scope of his corporate duties and were made for the purpose of investigation and rendering legal advice to the trustee.

392 B.R. 197, 202–03 (Bankr. D.S.C. 2008). Two conversations were at issue: one took place a few weeks prior to the former officer's deposition and the other took place just prior to the deposition. Id. at 200. Both were protected. Id. at 203.

Applying the factors announced in Hanover, the court finds that the attorney client privilege protects the communications between the Trustee's counsel with Natarajan and Bouma in preparation for their depositions. First, Natarajan and Bouma were directors or employees of FSW during the time relevant to the current legal matter. Second, as a result of their roles during that time period, Natarajan and Bouma possess knowledge relevant to counsel's current representation of the Trustee. In fact, Natarajan and Bouma were part of the management of FSW during the relevant period. As the Trustee's counsel pointed out at oral argument, the Trustee is now the management of the company. Thus, to the extent only communications "at the direction of management" are protected, the communications at issue here are covered. The final factor concerns whether the communications were for the purpose of obtaining or giving legal advice. There can be no doubt that the Trustee's counsel's discussions with Natarajan and Bouma were for the purpose of formulating the Trustee's legal response to the actions taken during Natarajan and Bouma's employment/directorship with FSW and for pursuing this litigation on behalf of FSW's bankruptcy estate.

LaPorte insists that Hanover does not apply here because the Trustee is pursuing this case on behalf of FSW's creditors and because at one time, the Trustee asserted claims against Natarajan and Bouma arising out of their conduct as a director and employee of FSW during the relevant period. In support of this argument, LaPorte cites an unpublished case from the Southern District of New York that looked to Justice Burger's concurrence in Upjohn to determine whether the attorney-client privilege extended to communications with a former employee. In Krys v. Sugrue

6

(In re Refco Inc. Securities Litigation), the court held that communications between plaintiffs' counsel and a former director and employee of a company called PlusFunds in advance of the former employee's deposition were not protected by the attorney-client privilege. 2012 U.S. Dist. LEXIS 27480, at *14-16 (S.D.N.Y. Feb. 27, 2012). The plaintiffs were the Joint Official Liquidators of the SPhinX funds and had been assigned the privilege rights of PlusFunds via a court order. Id. at *20. PlusFunds was described as a "defunct entity." Id. At the time, the plaintiffs had live claims against the deponent in his role as a former PlusFunds director and the deponent had been represented by independent counsel during meetings with plaintiffs' counsel and at the deposition. Id. at 21. The court concluded that "[i]n no sense can [a] former director of a defunct entity who is potentially liable to the [plaintiffs] be considered a 'client' or agent of the [plaintiffs], or acting at the direction of the [plaintiffs], such that the attorney-client privilege covers conversations between him and the [plaintiffs'] attorneys." Id.

LaPorte argues that similarly here, FSW is defunct and Bouma and Natarajan's conversations with the Trustee's counsel cannot be viewed as assisting counsel in providing legal advice to FSW especially where the Trustee previously had claims against Bouma and Natarajan related to their work for FSW. The court disagrees. First, Krys does not apply Louisiana law and LaPorte has presented no Louisiana authority that would support modifying the approach announced in Hanover. Second, the court finds that the fact of FSW's bankruptcy does not require a unique analysis. The Trustee stands in the shoes of FSW's management and it has the right to assert the attorney-client privilege on FSW's behalf. Thus, the Trustee is, for the purposes of this litigation, the former employer. This conclusion is supported by the decision in Worldwide, which held that pre-deposition communications between a bankruptcy trustee and a former officer of the debtor were protected by the attorney-client privilege. 392 B.R. at 202-03. Although the

7

Worldwide court was not applying Louisiana law, it relied on the Allen case in assessing the applicability of the attorney-client privilege, just as the Louisiana Supreme Court and the Eastern District of Louisiana have done in Turner and Hanover respectively. Further, unlike in Krys, the Trustee does not have live claims against Bouma and Natarajan and the deponents were not represented by independent counsel during their meetings with the Trustee or during their depositions.

LaPorte also cites a case from the Eastern District of Michigan, which concluded that "counsel's communications with a former employee of the client corporation generally should be treated no differently from communications with any other third-party fact witness." Infosystems, Inc. v. Ceridian Corp., 197 F.R.D. 303, 306 (E.D. Mich. 2000). The court noted that both the majority opinion and Justice Burger's concurrence in Upjohn required that an employee be communicating with counsel "at the direction of management" for the attorney-client privilege to apply. Id. at 305 (quoting Upjohn, 449 U.S. at 403) (Burger, C.J., concurring). The court in Infosystems expressed concern that:

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employer to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit.

Id. (quoting Clark Equip. Co. v. Lift Parts Mfg. Co., No. 82 C 4585, 1985 WL 2917, at *5 (N.D. Ill. Oct. 1, 1985)). The court concluded that the resisting party's post-termination communications with a former employee were not privileged because the resisting party had not met its burden to show that the communications were different "in some relevant way from counsel's communications with other third party witnesses." Id. Unfortunately, no detail is given in the opinion about what level of employee the witness was. Regardless, by rejecting the attorney-client

8

privilege over communications with a former employee almost entirely,³ the Infosystems opinion is clearly out of step with the Hanover and Turner decisions which did recognize the attorney-client privilege over corporate counsel's communications with a former employee in certain circumstances. Louisiana law controls here. Further, the court must reject the idea that, at least as to management employees like those under consideration here, a former employee is no different than a third party. Although the former employee is no longer controlled by the employer, the former employee's testimony has the ability to bind the company in a way that a third-party's testimony cannot.

LaPorte further argues that if the Trustee's counsel communicated information to Bouma and Natarajan that they did not previously have knowledge of, this information should not be protected by the attorney-client privilege. For example, in Peralta v. Cendant Corp., the District of Connecticut held that corporate counsel's communications with a former employee were only privileged to the extent they concerned activities within the course of her employment. 190 F.R.D. 38, 41 (D. Conn. 1999). However, the court observed, if counsel had informed the former employee:

> of facts developed during the litigation, such as testimony of other witnesses, of which [the former employee] would not have had prior or independent personal knowledge, such communications would not be privileged, particularly given their potential to influence a witness to conform or adjust her testimony to such information, consciously or unconsciously.

---

³ The court acknowledged that:
> there may be situations where the former employee retains a present connection or agency relationship with the client corporation, or where the present-day communication concerns a confidential matter that was uniquely within the knowledge of the former employee when he worked for the client corporation, such that counsel's communications with this former employee must be cloaked with the privilege in order for meaningful fact-gathering to occur.

Infosystems, 197 F.R.D. at 306.

9

Id. Additionally, the court held that discussions "during the break as to how a question should be handled" were not privileged and "opposing counsel has the right to ask about matters that may have affected or changed the witness's testimony." Id.; see Wade Williams Distribution, Inc. v. Am. Broad. Companies, Inc., No. 00 CIV. 5002 (LMM), 2004 WL 1487702, at *1 (S.D.N.Y. June 30, 2004) (instructing that the deposition of a former employee be conducted in accordance with the rules set forth in Peralta).

LaPorte has not presented an example of this type of limitation being imposed by a court applying Louisiana law. In any event, the rules proposed by Peralta seem impractical here. To the extent Bouma and Natarajan's communications with the Trustee's counsel concern their actions during their employment with FSW, those communications are privileged even if they were also discussing recent testimony. Parsing such a communication to extract some "unprivileged" portion is not possible. They are one and the same: a privileged communication concerning the witness's time as an employee or board member of FSW made for the purposes of providing legal advice to the Trustee of FSW's bankruptcy estate. The court notes that LaPorte can, of course, question the witnesses about matters that may have affected or changed their testimony, but this does not mean it can ask about privileged communications. It could ask, for example, "before you read the testimony of Witness X, what was your understanding of the situation involving witness X?" But it cannot ask, "did the Trustee's counsel show you the testimony of X, what did she tell you about it, and what did you tell her about the situation involving witness X?"

## Conclusion

For the foregoing reasons, the court finds that the test announced by the court in Hanover is applicable here and that the Trustee has met his burden of showing that the three factors apply

10

to his counsel's communications with Natarajan and Bouma in advance of their depositions. Accordingly, the Motion to Compel is DENIED.

New Orleans, Louisiana, this 17th day of September, 2020.

                                                     _____
                                                            Janis van Meerveld
                                              United States Magistrate Judge