UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD J. HOF, IN HIS CAPACITY AS CHAPTER TRUSTEE OF THE BANKRUPTCY ESTATE OF FOODSERVICEWAREHOUSE.COM, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10696** |
| **LAPORTE, A PROFESSIONAL ACCOUNTING CORPORATION, ET AL.** | **SECTION D (1)** |

## ORDER

Before the Court is Plaintiff Ronald J. Hof's Motion for Partial Summary Judgment on the Issue of Insurance Coverage.[1] Defendants LaPorte, APAC, and Continental Casualty Company have each filed an Opposition.[2] Plaintiff has replied to each Opposition,[3] and both Defendants have filed a Sur-Reply.[4] Because a determination on the issue of insurance coverage is improper before liability is established, the Court denies the Motion.

### I.   FACTUAL BACKGROUND

This is an accounting malpractice case. LaPorte, A Professional Accounting Corporation ("LaPorte"), is a Louisiana accounting firm. From 2015 through 2018, LaPorte had malpractice insurance issued by Defendant Continental Casualty

---

[1] R. Doc. 61.
[2] R. Doc. 75 (Continental); R. Doc. 82 (LaPorte).
[3] R. Doc. 93 (LaPorte); R. Doc. 94 (Continental).
[4] R. Doc. 97 (LaPorte); R. Doc. 100 (Continental).

Company ("Continental"). Continental issued three insurance policies to LaPorte during this time: one from July 1, 2015 through July 1, 2016 (the "2015-2016 Policy");[5] one from July 1, 2016 to July 1, 2017 (the "2016-2017 Policy");[6] and one from July 1, 2017 to July 1, 2018 (the "2017-2018 Policy").[7] Each Policy contains the following relevant language:

> If, during the policy period, you become aware of an act or omission that may reasonably be expected to be the basis of a claim against you, you must give written notice to us prior to the expiration of the policy period. Such notice must state the reasons for anticipating a claim, with full particulars, including but not limited to: 1. the specific act or omission; 2. the dates and persons involved; 3. the identities of anticipated or possible claimants; 4. the circumstances by which you first became aware of the potential claim. If such notice is given, then any claim that is subsequently made against you and reported to us shall be deemed to have been made at the time such written notice was received by us.[8]

Each Policy also states that Continental will provide coverage for:

> All sums in excess of the deductible, up to our limits of liability, that you become legally obligated to pay as damages and claim expenses because of a claim that is both first made against you and reported in writing to use during the policy period by reason of an act or omission in the performance of professional services by you or by any person for whom you are legally liable provided that: 1. you did not give notice to a prior insurer of any such act or omission or interrelated act or omission; 2. prior to the effective date of this Policy, none of you had a basis to believe that any such act or omission, or interrelated act or omission, might reasonably be expected to the basis of a claim; 3. such act or omission happened subsequent to the

---

[5] R. Doc. 75-3.
[6] R. Doc. 75-4.
[7] R. Doc. 75-5.
[8] *See* R. Doc. 75-3 at 29; R. Doc. 75-4 at 32; R. Doc. 75-5 at 24.

> prior acts dates; and 4. you did not give notice to a prior insurer of an interrelated claim.[9]

LaPorte was hired as an independent auditor for FoodServiceWarehouse.Com, LLC, ("FSW") and PRIDE Centric Resources ("PRIDE").[10] LaPorte conducted independent audits of both companies for both 2013 and 2014.[11] Both companies allege that LaPorte failed to conduct these audits properly, resulting in significant damages to both companies, including the bankruptcy of FSW.[12] It is these allegations of professional negligence that underly the current dispute.

According to Continental, on April 1, 2016, LaPorte notified Continental in writing of FSW's pending bankruptcy and of the circumstances that could lead to potential claims against LaPorte in connection with the services it provided to FSW and PRIDE.[13] Lew Campione of Continental spoke with Terri Troyer and Tracy Tufts of LaPorte that same day, and accepted the matter under the 2015-2016 Policy.[14] On April 16, Continental formally acknowledged the notice of potential claims and confirmed it would handle the matter as file number ALA06919 under the 2015-2016 Policy.[15]

On October 12, 2016, PRIDE filed an Application for Accountant Review Panel with the Society of Louisiana Certified Public Accountants ("SLCPA") against LaPorte regarding the 2013 and 2014 audits.[16] Notably, the application extensively

---

[9] *See* R. Doc. 75-3 at 23-24; R. Doc. 75-4 at 24; R. Doc. 75-5 at 32.
[10] *See* R. Doc. 1-3 at 3 ¶ 8; Docket No. 19-10163, R. Doc. 1 at 5 ¶ 17.
[11] R. Doc. 1-3 at 4 ¶ 11, 5 ¶ 15; Docket No. 19-10163, R. Doc. 1 at 5 ¶ 17.
[12] *See generally* R. Doc. 1-3; Docket No. 19-10163, R. Doc. 1.
[13] *See* R. Doc. 75-2 at 2 ¶ 7.
[14] *Id.* at 2-3 ¶¶ 8-9.
[15] *Id.* at 3 ¶ 12.
[16] R. Doc. 75-6 at 2.

referenced not only the audits of PRIDE, but also of FSW.[17] Approximately one month later, on November 15, 2016, Ronald Hof, the Bankruptcy Trustee of FSW, issued a letter to LaPorte regarding a potential claim "for malpractice arising out of LaPorte's issuance on October 15, 2015, of the Debtor's 2014 audited financial statements."[18] The letter demanding that LaPorte "turn over 'all recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs,' i.e., the Debtor's file in its entirety."[19] Subsequently, on May 17, 2018, the Trustee filed a complaint against LaPorte with the SLCPA regarding both the 2013 and 2014 audits of FSW.[20]

Plaintiff Ronald Hof now seeks partial summary judgment on the issue of what insurance policy applies to the case pending before the Court.[21] In his Motion, Plaintiff argues that any coverage for the 2014 audit should be covered under the 2016-2017 Policy based on the timing of its demand letter, but that the 2013 audit should be covered under the 2017-2018 Policy because the first time LaPorte received notice of a claim related to the 2013 audit was the Trustee's May 2018 complaint with the SLCPA.[22] Plaintiff also argues that PRIDE's October 12, 2016 complaint with the SLCPA could not act as notice of a potential claim regarding the 2013 FSW audits, despite the fact that complaint explicitly mentions that audit twice. In short, Plaintiff

---

[17] *See generally id.*
[18] R. Doc. 75-7 at 2.
[19] *Id.* at 3.
[20] R. Doc. 75-9.
[21] R. Doc. 61.
[22] The Court notes that Plaintiff references Federal Rule of Civil Procedure 26 in its Motion. *See* R. Doc. 61-2 at 5. That Rule requires disclosure of insurance policies. As each of the policies is now part of the Court record, *see* R. Docs. 75-3 to 75-5, the Court does not consider Fed. R. Civ. 26 to have a bearing on the instant dispute.

argues that he "believes" that the first time LaPorte had information about a potential claim specific enough to give notice to Continental was when Plaintiff himself gave explicit notice of the claim through either the demand letter (for the 2014 audit) or the 2018 SLCPA complaint (for the 2013 audit).

LaPorte filed an Opposition, arguing that a declaratory judgment as to which insurance policy applies is premature as LaPorte has not been found liable for any of Plaintiff's claims.[23] Plaintiff filed a Reply,[24] in which he argues that an "actual controversy" exists regarding which insurance policy applies to which claim, and the Court *may* therefore rule on its Motion at this stage and enter a declaratory judgment. LaPorte filed a Sur-Reply,[25] noting that the cases cited by Plaintiff regarding an "actual controversy" are inapposite here, as the relevant issue herein involves a duty to indemnify, for which there is separate governing caselaw.

Continental also filed an Opposition to Hof's Motion for Partial Summary Judgment.[26] Continental claims that it received notice of a potential claim from LaPorte in April 2016 in writing regarding both the 2013 and 2014 audits of FSW and PRIDE. It therefore set up a claim file and has since handled these claims under the 2015-2016 Policy. Continental further stresses that even if LaPorte did not comply exactly with the requirements of the policy because it did not provide the particulars of a potential claim "in writing," Continental could waive such a

---

[23] R. Doc. 82.
[24] R. Doc. 93.
[25] R. Doc. 97.
[26] R. Doc. 75.

requirement. Continental also stresses the strong policy considerations behind enforcing a Notice of Potential Claims Provision.

Plaintiff filed a Reply[27] to Continental's Opposition, in which he argues that the 2015-2016 Policy could not apply because LaPorte's April 2016 communication with Continental could not have satisfied the notice requirement of the Policy. Plaintiff then reiterates his arguments that the 2013 audit is covered by the 2017-2018 Policy and the 2014 audit is covered by the 2016-2017 Policy. Continental filed a Sur-Reply[28] in which it argued that Plaintiff's contention that LaPorte's April 2016 notification to Continental was deficient is pure speculation because Plaintiff has not seen the communication. Continental further argues that the claims regarding the 2013 and 2014 audits were sufficiently interrelated such that, even if the April 2016 notification was insufficient, the November 2016 demand letter triggered coverage for both audits under the 2016-2017 Policy.

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[29] If the movant shows the absence of a disputed material fact, the non-movant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[30] The Court views facts and draws reasonable inferences in the non-

---

[27] R. Doc. 94.
[28] R. Doc. 100.
[29] FED. R. CIV. P. 56(a).
[30] *McCarty v. Hillstone Restaurant Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

movant's favor.³¹ The Court neither assesses credibility nor weighs evidence at the summary judgment stage.³²

### III. ANALYSIS

The Court first addresses whether entering judgment on the issue of insurance coverage is appropriate at this stage of the litigation. While styled as a Motion for Partial Summary Judgment on the issue of insurance coverage, in reality Plaintiff seeks a declaratory judgment clarifying which insurance policy would govern Continental's duty to indemnify LaPorte in the event LaPorte is found liable for its work on the 2013 and 2014 audits. Importantly, the Court notes that LaPorte has yet to be found liable at all, and therefore a duty to indemnify LaPorte may never arise. "Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment, the issue of indemnity is premature and non-justiciable."³³ Numerous courts have come to similar conclusions.³⁴

Plaintiff resists this conclusion by arguing that there is a sufficient "actual controversy" such that the Court can issue a declaratory judgment. It argues the Court should consider the factors laid out by the Fifth Circuit in *St. Paul Insurance Company v. Trejo*³⁵ to determine whether a declaratory judgment should issue. But

---

³¹ *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018).
³² *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (internal citation omitted).
³³ *New England Ins. Co. v. Barnett*, 465 F. App'x 302, 308 (5th Cir. 2012) (citing *Mossy Motors, Inc. v. Cameras Am.*, 898 So. 2d 602, 607 (La. App. 4 Cir. 2005).
³⁴ *See Threadgill v. Orleans Parish School Bd.*, No. 02-1122, 2013 WL 3777036, at *2 (E.D. La. July 18, 2013) ("The Fifth Circuit has made clear that the duty-to-indemnify issue [is] not ripe when the underlying . . . lawsuit has not yet been completed.") (citing *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.* No. 10-1682, 2012 WL 1198611, at *11 (E.D. La. Apr. 10, 2012) (internal citation and quotations omitted); *Lafayette Parish School Bd. v. Surrency*, 583 So. 2d 1206, 1209-10 (La. App. 3 Cir. 1991) (vacating a judgment determining insurance coverage before liability had been established).
³⁵ 39 F.3d 585 (5th Cir. 1994).

that case, and other cases applying the *Trejo* factors,[36] did not deal with a party seeking a declaratory judgment as to whether a duty to indemnify arises before liability is established. Instead, *Trejo* and similar cases dealt with determining if dismissal of a declaratory judgment action is improper in other contexts dealing with abstention. Nor does the case cited by Plaintiff in its Motion, *Pioneer Exploration, L.L.C. v. Steadfast Insurance Company*,[37] require the opposite conclusion. There, millions of dollars in liability had already been established *before* the Court considered whether a duty to indemnify arose.[38] Properly understood, *Pioneer Exploration* stands for the proposition that a court may determine whether an insurance policy applies on a Motion for Summary Judgment after liability is established. Such are not the facts before the Court. The Court shall, however, be positioned to rule on a reurged Motion for Summary Judgment on the issue of insurance coverage should LaPorte be held liable.

Alternatively, the Court finds that an issue of material fact exists that precludes entering summary judgment on the issue of insurance coverage. Plaintiff moves for a judgment declaring that the 2016-2017 Policy applies to the 2014 audit, and that the 2017-2018 Policy applies to the 2013 audit. But Continental presented evidence, in the form of the Declaration of Lew Campione,[39] that indicates that both audits would be covered by the 2015-2016 Policy. Specifically, Campoine attests that

---

[36] *See Vulcan Materials Co. v. City of Tehuacana*, 2378 F.3d 382 (5th Cir. 2001); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774 (5th Cir. 1993).
[37] 767 F.3d 503 (5th Cir. 2014).
[38] *Pioneer Exploration,* 767 F.3d at 508 (listing the damages sought by Pioneer, including settlement costs).
[39] *See* R. Doc. 75-2.

he received a notice in writing of the claims related to the 2013-2014 audits on April 1, 2016 and spoke with Terri Troyer of LaPorte about those claims on the same day.[40] Continental has presented factual evidence indicating that the 2015-2016 Policy applies, and, at a minimum, has raised an issue of material fact as to whether the 2016-2017 or 2017-2018 Policies apply. Therefore, Plaintiff's Motion for a judgment declaring that the 2016-2017 and 2017-2018 Policies apply to the 2014 and 2013 audits, respectively, must therefore be denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

New Orleans, Louisiana, October 27, 2020.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[40] *See id.* at 2-3 ¶¶ 7-8.